### In re FREEDMAN.

(Supreme Court, Appellate Division, First Department. May 25, 1906.)

ATTORNEY AND CLIENT—MISCONDUCT.

> The attorney for an administrator had, prior to the administrator's appointment, arranged to borrow money of him, and after the appointment the administrator withdrew from the bank funds belonging to the estate, which funds were deposited by the attorney in his own bank to his own credit; a part being used to cover an overdraft. The attorney then gave the administrator a check for a part of the funds, a note for the balance, and paid him $50 in cash for making the loan. *Held* that the attorney was guilty of misconduct, within Code Civ. Proc. § 67, authorizing suspension from practice of attorneys therefor.

Proceedings against Jacob Stone Freedman to punish respondent for misconduct as an attorney. Respondent suspended from practice for a period of six months.

Argued before O'BRIEN, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

PER CURIAM. The papers in this proceeding, including the answering affidavit of the respondent and the papers upon the motion before Mr. Justice Leventritt, have been carefully considered, and, adopting the respondent's version of the facts, we think his conduct extremely reprehensible. The respondent's statement substantially is that he was financially embarrassed; that he applied to one Nathan Lewis to make him a loan, which Lewis had agreed to do; that subsequently Lewis came to him and stated that his (Lewis') father was dead and had left a deposit in a savings bank of about $800; that the respondent, as Lewis' attorney, obtained letters of administration for Lewis upon the estate of his father and went with Lewis to the savings bank in which this money was deposited to withdraw the money from the bank; that in the meantime Lewis had promised him that after the money was obtained he would perform his promise and loan the respondent $300; that Lewis had had some dispute with his brother about his father's property, and upon arriving at the bank was in-

formed that his brother had notified the bank not to pay the money to Lewis, and that thereupon Lewis insisted upon at once drawing the money out of the bank, and having withdrawn the money he started to open another account in Lewis' name as administrator; that subsequently Lewis refused to open the other account, upon the ground that, if he did, his brother might get the money, and thereupon proposed to the respondent to deposit the money in his (respondent's) bank; that thereafter the respondent and Lewis went to the bank and were informed by the bank that the respondent's account was overdrawn, and the bankbook would not be delivered up until the overdraft was made good; that thereupon the respondent took the money belonging to this estate and deposited it to his own credit to make this overdraft good, thus appropriating the money of the estate to pay his (respondent's) indebtedness; that subsequently he gave the respondent a check for $500, which was paid, a promissory note for $300 payable to Lewis personally, and at the same time gave Lewis $50 in cash for loaning him the $300 out of the funds of the estate. The respondent says that Lewis proposed this arrangement, but deponent told Lewis that "he could not do so; that it was unlawful for any person but the administrator to have possession of the estate funds." With the appreciation of the impropriety of his using the funds of an estate where he was the attorney for the administrator, he consented to take the property of this estate, deposited it in his own bank where a portion of it would be applied to the payment of his own indebtedness to the bank; and this improper conduct is not at all excused by the respondent's statement that Lewis said, when the respondent told Lewis that he could not use the estate money to cover this overdraft, that there was no sense in their going to Lewis' bank to withdraw $300 more and deposit $1,100; that the deponent should deposit the $800, give the petitioner a note for $300 and a receipt for $500, and he would make good the $300 when he had settled with his brother; and that immediately he gave to Lewis personally $50 as payment for the use of this money of the estate for a short time, which apparently it was understood that Lewis should appropriate to his own use.

We think that such conduct by an attorney is improper and should not be overlooked.

Our conclusion is, therefore, that, adopting the respondent's own statement, he was guilty of malpractice under section 67 of the Code of Civil Procedure, and for this offense the respondent should be suspended from practice for a period of six months.