(169 App. Div. 642)

## In re LEVOR.

(Supreme Court, Appellate Division, First Department. November 5, 1915.)

ATTORNEY AND CLIENT ⬤⟳44—DISBARMENT OR SUSPENSION OF ATTORNEY—PERSONAL MISCONDUCT.

An attorney collected money for his client in settlement of a claim against a railway company, deposited it in his own bank account, and closed out the deposit before making any remittance to his client. After his client's daughter had twice written to him, made an unsuccessful attempt to see him at his office, and complained to the grievance committee of the Association of the Bar, the attorney, almost two months

⬤⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

after the receipt of the money, without having answered such letters, or made any effort in the meantime to see his client, except by sending her a misdirected letter, which was returned, paid over the money, less his fee. His only excuse for the delay was that he was busy with other matters and had not agreed with the client as to his fee. *Held*, that his acts constituted unprofessional conduct, requiring his suspension from practice for one year.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 55, 56, 62; Dec. Dig. ☞44.]

Proceeding on charges against Harry Levor, an attorney and counselor at law, for professional misconduct. On application on the report of the official referee. Respondent suspended from practice.

See, also, 158 App. Div. 935, 143 N. Y. Supp. 1127.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Einar Chrystie, of New York City (George T. Hoar, of New York City, of counsel), for petitioner.

PER CURIAM. The respondent is charged by the Association of the Bar of the City of New York with having converted to his own use certain funds, the property of a client, Mrs. Rosie Levy. The facts are very simple and are undisputed:

On November 14, 1912, Mrs. Levy was knocked down and injured by a car belonging to the New York Railways Company. She retained the respondent to procure compensation from the railway company. He opened negotiations with the company, which resulted in a settlement of the claim for the sum of $100, which was paid to respondent on December 28, 1912, by a check payable to Rosie Levy or Harry Levor, attorney. He indorsed this check and deposited it to his own credit in his own bank account in the United States Mortgage & Trust Company. This account he ultimately closed out, before he had made any remittance to his client. At the time of closing his account he had to his credit a less sum than what he owed his client, and when he finally settled with her he had no bank account at all.

Twice the client's daughter, Emily Levy, wrote respondent in her mother's behalf, asking whether the settlement had been carried through; but respondent failed to answer either letter, although he does not deny having received them. Miss Levy also called at respondent's office, but was informed that he was not in. Finally, after these unsuccessful attempts to obtain information from respondent, she called at the office of the railway company and there learned that the claim had been settled and the money paid on December 28, 1912. She thereupon complained to the grievance committee of the Association of the Bar, and notice was given to the respondent of her complaint. After the receipt of this notice he sent the client, Mrs. Levy, a money order for $66.16, retaining the balance (33⅓ per cent.) for his fee. This was on February 26, 1913, two months less two days after the receipt of the money by him. During the intervening period he had made no effort to see his client, except to send her a misdirected letter, which was returned to him. He makes no valid excuse for this unreasonable

delay, except to plead that he was busy with other matters, and had not agreed with his client as to his fee.

. Upon this state of facts the learned official referee has reported that the charge against respondent has not been sustained, being evidently impressed with the bearing and demeanor of the respondent upon the reference. We find ourselves unable to take so lenient a view of the respondent's acts. That the charge of conversion was technically made out is rendered clear by the respondent's own testimony. He received his client's money, deposited it in his own bank account, drew it out, and used it for his own purposes, and until spurred to activity by the charges made against him took no steps toward paying his client what was due her, and showed no disposition or intention of making such payment. This was clearly professional misconduct, and we cannot accept the fact of payment under the spur of disciplinary proceedings as a satisfactory condonation of his offense. We regret to differ from the learned and careful official referee, and should hesitate to do so if there were any disputed questions of fact involved. But upon the conceded facts we are compelled to find that the charge of unprofessional conduct has been sustained.

Our conclusion is that the respondent should be suspended from practice for the term of one year, with leave to apply for reinstatement at the expiration of that term, upon proof of his compliance with the conditions to be incorporated in the order to be entered hereon.