Respondent disbarred.    Settle order on notice.

---

## SUPREME COURT — APPELLATE DIVISION — FIRST DEPARTMENT.

### February 8, 1924.

## MATTER OF JACOB MAKAY.

#### (208 App. Div. 44.)

ATTORNEY AND CLIENT—DISCIPLINARY PROCEEDINGS—ATTORNEY DISBARRED FOR APPROPRIATING TO HIS OWN USE MONEY BELONGING TO CLIENTS—DEFENSES OF LIEN ASSERTED IN TWO INSTANCES AND LOAN IN TWO INSTANCES NOR PROVEN.

An attorney at law disbarred from practice for appropriating to his own use money belonging to his clients.

The defenses asserted by the attorney to two of the charges that he had a lien on the money paid to him, and as to two other charges that the money which he was charged with misappropriating was loaned to him, are not proven.

DISCIPLINARY proceedings instituted by the Association of the Bar of the City of New York.

*Einar Chrystie,* for the petitioner.

*Nathan B. Chadsey,* for the respondent.

CLARKE, P. J.:

The respondent was admitted as an attorney and counselor at the October, 1905, term of the Appellate Division of the First Department, and was practicing in such department at the time of the acts charged.

The petition charges that the respondent was guilty of misconduct as an attorney and counselor at law, and sets forth four specific charges of conversion of the moneys of clients to his own use. The learned official referee in his report has sustained each of the said charges.

Charge No. 1 is in substance that in July, 1920, Julius Behrendt retained respondent to bring an action against the Fordham Woman's Shop to recover the sum of $300.60; that respondent without his client's knowledge or consent settled the claim for $250 and converted the money to his own use. The evidence establishes that the respondent received a check in settlement of this claim dated December 17, 1920, for $250. The transcript of respondent's bank account shows that almost immediately after having received and deposited the sum collected he began drawing upon it for his own purposes and uses. On January 18, 1921, respondent wrote: "In order that you should not become impatient I am writing you to tell you that I will receive this check not later than tomorrow, and I am going to mail same to you without fail."

In another letter inclosed in an envelope bearing the post mark of March 10, 1921: "I wish to inform you that I have taken judgment against the Fordham's Woman Shop and they have until Monday to pay same."

The learned official referee reports: "After a careful consideration of the respondent's testimony together with the documentary evidence and having in mind the respondent's prompt appropriation of the funds to his own uses, the referee is of opinion that the respondent's testimony is not worthy of reliance. I find the correspondence shows that respondent at the time of writing recognized his indebtedness to his client; that his bank account shows that he spent the money collected and his claim of lien cannot therefore be accepted as having been made in good faith under all the circumstances, it being palpably an after-thought."

Our independent examination of the record leads us to the same conclusion.

Charge No. 2 alleges that in May, 1920, Julius Behrendt gave respondent the sum of $376.79 for the specific purpose of paying an accountant's bill of $275 and certain insurance premiums amounting to $101.79. Respondent paid out $94.50 of said money for insurance and converted the balance to his own use. It was conceded in the evidence that respondent disbursed $94.50 for insurance premiums. It was shown by the transcript of his bank account that he began to use the $275 for his own purposes and uses almost immediately after its receipt and deposit by him. The respondent claimed that the $275 received by him for the express purpose of paying the accountant's bill was to be held by respondent awaiting the outcome of an action for $3,000, brought by Behrendt against the Massachusetts Bonding Company. Behrendt denies that such was the understanding, and on the contrary testifies that after waiting for some six months for respondent to press the action against the bonding company, Behrendt settled it himself for $2,000. Respondent testified that he did not learn of the settlement of the bonding company claim until about a year or so afterwards. The learned official referee says: "Accepting as true respondent's statement as to when he learned of the settlement made by his client of the Bonding Company claim, even in accordance with his own interpretation of the conditions under which he received the money, it was his duty then at once to pay the $275 to the accountant or return it to his client," and calls attention to a letter to his client, dated as late as April 10, 1922, in which he says: " I have expected my money long before this, but you know how it is when you sell a piece of property, there are always delays and I assure you that I am very anxious to pay you this debt and I am writing to you to please write the above concern (respondent's attorney's firm) not later than Thursday of this week that you

are willing to withdraw the charges you made against me at the Bar Association   *   *   *

" P. S.   The Bar Association will drop these if you will withdraw them."

And the referee states that " as late as writing the above letter, it appears the respondent considered that he was under obligation to his client for making improper use of the funds entrusted to his care.   The respondent cannot claim a lien upon funds placed in his hands for a specific purpose when such funds have already been appropriated by him to his own uses."

The third charge is that in November, 1920, one Mrs. Valendina Miagnogna retained the respondent to look after her interest in the matter of certain claims she had against the tenants of her property; that thereafter the respondent collected seventy-five dollars from said tenants and converted the same to his own use.   The respondent admits collecting the seventy-five dollars, but states that said sum was loaned to him by his client.   The client testified that she had known respondent for fifteen years or more, that he had borrowed money from her at times, had paid some of it back, and that she had never at any time said that he could use the seventy-five dollars collected by him or any part of it.   And her daughter testified that at the time the money was collected by respondent they were in the municipal court in Brooklyn, and that the respondent said, " You go home and I will take the rent and bring it to you." " And he never showed up with the money any more."   There is also in evidence a telegram and letter sent by the respondent to his client promising to send the money.   It is not denied that the seventy-five dollars remains unpaid.

The fourth charge is that the respondent, while acting as attorney for the executrix of an estate, induced her to withdraw funds belonging to the estate, to deliver the same to him, and that respondent converted the money so delivered to his own use.   It appears that in June, 1920, one Jane Reilly was

a school teacher. The learned referee states her testimony was of such a quality as to command credence. She retained the respondent to act as her attorney in the settlement of the estate of her mother, Maria Reilly. Jane Reilly was appointed executrix of said estate, which consisted in part of certain moneys deposited in savings banks. In accordance with advice of the respondent, Jane Reilly withdrew about $2,900 of the estate moneys from the savings banks and delivered them to respondent, who agreed to open accounts in her behalf as executrix and to deposit the money therein. This course was not followed by the respondent, who testified that, a dispute arising between the heirs over the possession of a ring, it was agreed he was to be allowed to keep the money awaiting the settlement of the estate; and that in addition Miss Reilly agreed with him that the estate money should be in the meantime invested at six per cent by the respondent, and further testified that Miss Reilly consented that on this basis he personally should have the use of said money, as at that time his house was under foreclosure. Miss Reilly emphatically denied any agreement to loan the moneys or any part thereof to the respondent. Being unable to collect the moneys on demand from respondent, she instituted a summary proceeding in the Supreme Court, in which he was charged with conversion. Respondent defaulted. An order was entered directing him to pay over the money. Failing to obey the order, a second order was then entered finding respondent guilty of contempt of court and directing his imprisonment. The attorney who acted as counsel for the executrix in the summary proceeding testified to his efforts to obtain repayment of the moneys belonging to the estate, and that part of it was repaid in installments, and that a settlement was finally reached on March 16, 1922, after the matter had been brought to the attention of the Bar Association. The evidence shows that he deposited a check for $1,756.78 in his own account on the 2d of July, 1920, and began to use the funds the day after, and that he had almost

entirely used this amount before he deposited the second amount on August 31, 1920, which was $938.83, and it appeared that he never thereafter had sufficient funds to repay the amount converted.

Even if the claim of a loan had any support in the evidence, his conduct would have been reprehensible and unethical. (Matter of Freedman, 113 App. Div. 327; Matter of Little, 175 id. 280.) But we are satisfied that there is no foundation in fact for the respondent's claim that a loan had been made to him by his client, the executrix, but that it was a clear case of deliberate misappropriation of the moneys of the estate to meet his own necessities.

We approve the findings of the learned official referee as to each one of the charges. Our independent examination of the evidence, and especially that given by the respondent, forces the conclusion that his story is impossible and incredible. The fact that after the institution of these proceedings he paid back to the Reilly estate the amount due it is not a condonation of the offense. As we said in Matter of Levor (169 App. Div. 642), quoted with approval in Matter of Little (175 id. 284): "We cannot accept the fact of payment under the spur of disciplinary proceedings as a satisfactory condonation of his offense."

The respondent having been found guilty of these four instances of the conversion of his clients' money to his own use, it is demonstrated that it would be unsafe and improper to permit him to further continue to be a member of the bar of this state. It is stated in his behalf that no prior proceedings have been brought against him. Giving this due weight, it nevertheless seems to us upon this record that the evidence so clearly establishes the professional unfitness of the respondent that we are required to order that he be disbarred.

DOWLING, FINCH, McAVOY and MARTIN, JJ., concur.

Respondent disbarred. Settle order on notice.